309; *National Park Bank* v. *German Am. M. W. & S. Co.*, 116 id. 281.)

So that the rule adverted to does not obtain in this case, and the plaintiff must show both that it was a holder for value, and also that it did not know the accommodation character of the defendant's signature.

The other question discussed in the brief of the appellant's counsel we do not deem it essential to refer to.

The judgment and order should be reversed and a new trial granted, with costs to the appellant to abide the event.

All concurred; WILLIAMS, J., in result only.

Judgment and order reversed and new trial granted, with costs to the appellant to abide event.

---

THE PEOPLE OF THE STATE OF NEW YORK ex rel. HENRY C. MARCH, Respondent, *v.* ANDREW J. BEAM and GEORGE O. FLYNN, Surviving Inspectors of Election of the Village of East Rochester, Appellants.

Fourth Department, January 30, 1907.

**Elections — use of unofficial ballot unauthorized — mandamus to inspectors to reconvene and certify result.**

The Election Law prohibits the use of unofficial ballots except as provided in sections 89 and 107.

When it appears that at a village election an official ballot conforming to the statute was printed and used, the inspectors of election are without authority to issue, poll or count unofficial ballots, and if they have done so, mandamus will issue to compel them to reconvene, return the unofficial ballots, correct the statement of the results of the canvass and make a proper certificate of the result.

The writ will issue even though the officials elected on the unofficial ballot have been declared elected and are holding office. While under the writ the court cannot oust *de facto* officers and induct others in their places, the writ lies for the purpose aforesaid, and the persons who then appear to have received the legal majority may assert their rights to office in a proper proceeding.

APPEAL by the defendants, Andrew J. Beam and another, from an order of the Supreme Court, made at the Monroe Special Term bearing date the 3d day of December, 1906, and entered in the

office of the clerk of the county of Monroe, directing the issuance of a peremptory writ of mandamus.

*Merton E. Lewis,* for the appellants.

*Harvey F. Remington,* for the respondent.

Order affirmed, with ten dollars costs and disbursements, on opinion of SUTHERLAND, J., delivered at Special Term.

All concurred.

The following is the opinion delivered at Special Term:

SUTHERLAND, J.:

This is an application for a writ of mandamus to compel the inspectors of election and ballot clerk officiating at a village election, held in the village of East Rochester on the 13th day of November, 1906, to reconvene and return the unofficial ballots voted at such election, and to correct the statement of the result of the canvass of such election, and to make a proper certificate of the result thereof.

The first election in the village of East Rochester was held November 13, 1906. The village had recently become incorporated under the provisions of the general Village Law,* and the village clerk, on the thirty-first day of October, duly called and posted notices for such election to be held November thirteenth. November third a certificate of nomination was duly filed with the village clerk, signed by the requisite number of electors in said village, to entitle the ticket thus nominated to be printed upon an official ballot. The certificate of nomination named Henry C. March as a candidate for president; Charles S. King and Jones R. De Ritter as candidates for trustees; B. J. Fryatt for treasurer, and Lee Ransom for collector, and the ticket was designated "People's Ticket," and the emblem chosen was a house. No other certificate of nomination of any candidate was filed. The village clerk caused an official ballot to be printed with the necessary indorsement required by the statute,† and said official ballot contained the names of the nominees of the People's ticket in an appropriate column, and also a blank column, as required by statute,† in which the voters could write the names of other persons if they so desired.

---

* See Laws of 1897, chap. 414, as amd.— REP.

† See Election Law (Laws of 1896, chap. 909), § 81.— [REP.

At the opening of the polls on the day of election unofficial ballots for a ticket, called the Citizens' ticket, headed by T. Joseph Mitchell as candidate for president, were handed to the inspectors of election by persons interested in securing the election of the so-called Citizens' ticket, and in spite of the protest of the watchers and supporters of the People's ticket the inspectors did hand to voters not only the official ballot, but the unofficial ballot aforesaid, and about 200 unofficial ballots were voted and received by the inspectors. At the close of the polls the inspectors were requested not to count the unofficial ballots, and a protest against said unofficial ballots was made upon the ground that they were void and were marked for identification; but the protests were ignored and the unofficial ballots were counted and the persons named therein declared elected, and a certificate of the result of the election was made and signed by the inspectors, in which the candidates upon the Citizens' ticket were credited with the full amount of votes received upon the unofficial ballot as well as votes which they received written in the blank column upon the official ballot. Had the unofficial ballots been thrown out, the People's ticket, headed by March, would have been elected. As it was, the Citizens' ticket was declared elected, and the men named therein took the oath of office and are now acting as village officers.

Under section 80 of the Election Law * it was the duty of the village clerk to provide official ballots for this election, which duty he performed, and section 106 of the Election Law provides as follows: "No ballot without the official indorsement shall be allowed to be deposited in the ballot box, except as provided by sections eighty-nine and one hundred and seven of the Election Law, and none but ballots provided in accordance with the provisions of the Election Law shall be counted." The exceptions referred to are where the official ballots are not delivered at the time required, or are lost, destroyed or stolen, or where the supply of official ballots is exhausted before the polls are closed. But in this case official ballots were provided, and there was an abundant supply.

Section 111 of the Election Law says: "Such inspectors shall,

---

* See Laws of 1896, chap. 909, § 80, as amd. by Laws of 1897, chap. 609; Id. § 86, as amd. by Laws of 1905, chap. 643.— [Rep.

whenever unofficial ballots are voted, return all of such ballots in the package with the void and protested ballots." Instead of returning these unofficial ballots in a package with the original statement of the canvass, the inspectors in this instance put the unofficial ballots which they had counted in the ballot box with the official ballots which they had counted, sealed the box and turned it over to the custody of the village clerk.

In this proceeding the relator asks for an order directing the inspectors to reconvene and make a correct statement of the result of the canvass, rejecting the unofficial ballots as void and returning said unofficial ballots which had been voted in a package, as required by the statute, instead of leaving them in the ballot box; and I have no doubt of the power and duty of the court in this proceeding to grant the order asked for in this respect.

Ever since the agitation in this State for a reform of the ballot found response in the Saxton Law and in the later legislative enactments on the subject, the courts have recognized that the official ballot is the keystone of the new structure, and that the explicit prohibition upon the use of unofficial ballots, except in the instances allowed by the statute, must be enforced even if such enforcement in some cases results in the throwing out of the votes of honest citizens and the defeat of candidates favored by the majority, the greater interest of the people in the maintenance of the essential principles embodied in the reform measures being thus subserved. (*People ex rel. Nichols* v. *Board of Canvassers*, 129 N. Y. 395.)

It has been well said that in this proceeding the court cannot oust the *de facto* officers who are now serving, and induct the petitioner and his associates in their places. What the court can do in this proceeding, and is bound to do, is to see that the inspectors of election follow the law and make proper certification of the result. The persons who then appear to have received a majority of the legal votes can assert their rights to their respective offices, as they may be advised, in some other form of proceeding.

The application for a writ of mandamus is granted as to the inspectors, the form of the order to be settled on two days' notice, to take effect as of December 3, 1906, and the relator is allowed thirty dollars costs and disbursements.